UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| KEITHA CALMES, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 24-386-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| FRANK BISIGNANO, Commissioner of Social Security, | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Keitha Calmes ("Calmes") appeals the Commissioner of Social Security's (the "Commissioner") denial of her claim for disability insurance benefits. She contends that Administrative Law Judge Greg Holsclaw's (the "ALJ") subsequent decision is not supported by substantial evidence and that he unduly limited the admission of certain medical records. Upon review of the record and the parties' arguments, the Court finds that substantial evidence supports the ALJ's decision and that he correctly considered all relevant evidence in rejecting Calmes claim for disability benefits. Accordingly, the Commissioner's decision will be affirmed and Calmes' motion for judgment will be denied.[1]

---

[1]   References to the Administrative Transcript located at Record No. 7 will be referred to hereafter as "Tr."

- 1 -

**I.**

Calmes filed the instant application for disability insurance benefits on March 12, 2021, alleging a disability beginning on July 9, 2020.[2] [Tr. 613] The claim was denied initially on September 12, 2021, and upon reconsideration on February 2, 2022. [Tr. 613] ALJ Greg Holsclaw held administrative hearings regarding the claim for benefits on February 17, 2023, and July 7, 2023. [Tr. 692-748; 631-691] He issued a written opinion denying benefits on August 29, 2023.[3] [Tr. 613-624] The Appeals Council denied Calmes' request for review on May 17, 2024. [Tr. 40-48] The matter is ripe for judicial review. *See* 42 U.S.C. § 405(g).

**II.**

A "disability" under the Social Security Act is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc). If the claimant satisfies the first four steps of the process, the burden shifts to the

---

[2]   Calmes filed a prior application for disability benefits on February 12, 2019. That claim was denied on June 21, 2019, and upon reconsideration on September 6, 2019. ALJ Karen Jackson issued a decision on July 8, 2020, and the Appeals Council denied Calmes' request for review on December 9, 2020. [Tr. 752-762; 769-772] Although Calmes attempts to relitigate portions of the former decision, the Complaint only references the presently disputed 2023 decision. Further, the undersigned will not consider any arguments challenging ALJ Jackson's decision because they are untimely and that decision is final. *See* 42 U.S.C. § 405(g).

[3]   Throughout her brief, Calmes mistakenly refers to ALJ Holsclaw as "the Defendant." However, the defendant in this case is the Commissioner, not the ALJ.

Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that she is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b). Second, the claimant must show that she suffers from a severe impairment or a combination of impairments. 20 C.F.R. § 404.1520(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(d). Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination regarding disability based on medical evaluations and current work activity, the Commissioner will review the claimant's RFC and relevant past work to determine whether she can perform her past work. 20 C.F.R. § 404.1520(e). If she can, she is not disabled. 20 C.F.R. § 404.1520(f).

Under the fifth step of the analysis, if the claimant's impairments prevent her from doing past work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether he can perform other work. If she cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

The Court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards in reaching his decision. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

### III.

Keitha Calmes was 47 years old when she applied for disability insurance benefits for the second time. She was employed previously as a package handler and later as an insurance underwriter. [Tr. 1053] Calmes stopped working in December 2017 due to alleged physical and mental issues. [Tr. 39] She alleges a disability onset date of July 9, 2020, and her date of last insured status is December 31, 2023. [Tr. 616]

As noted above, the ALJ conducts a five-step analysis when evaluating social security disability claims. Here, at step one, the ALJ found Calmes met the insured status requirements of the Social Security Act through December 31, 2023, and that she had not engaged in substantial gainful employment since July 9, 2020. [*Id.*] At step two, the ALJ determined that Calmes suffers from the following severe impairments:

> fibromyalgia/undifferentiated and mixed connective tissue disease; osteoarthritis; degenerative disc disease; right inguinal hernia, status-post repair and subsequent diagnostic laparoscopy; reflex sympathetic dystrophy/complex regional pain syndrome (RSD/CRPS), and undifferentiated and mixed connective tissue disorder, left lower extremity, secondary to remote 5th metatarsal fracture; emphysema/asthma; somatic symptoms disorder; generalized anxiety disorder; attention deficit hyperactivity disorder and adjustment disorder.

[*Id.*]  At step three, the ALJ determined Calmes' physical and mental conditions (individually or collectively) did not medically qualify as severe impairments under any listing in 20 CFR Part 404, Subpart P, Appendix 1 ("Appendix 1").  [Tr. 617]  He further determined that Calmes has moderate limitations understanding, remembering, and applying information and interacting with others.  [*Id.*]  Finally, the ALJ found that Calmes had no severe mental impairments.

The ALJ next determined that Calmes had the residual functional capacity ("RFC") to perform light work with certain limitations.  [Tr. 618]  He also found that Calmes was unable to perform any of her past relevant work at step four.  Finally, at step five, the ALJ determined that Calmes could still perform a significant number of jobs in the national economy based on her age, education, work experience, and RFC.

### IV.

#### A. Listed Impairments

Calmes contends that the ALJ erred at step three, which concerns whether her impairments are sufficiently severe to meet or exceed the criteria of an enumerated impairment under Appendix 1.  Specifically, Calmes argues that she meets the criterion for undifferentiated and mixed connective tissue disease ("UCTD") under Appendix 1 subsection 14.06 B, and the ALJ's determination she did not was incorrect.  The listed impairment requires the following symptoms, in relevant part:

> Repeated manifestations of undifferentiated or mixed connective tissue disease, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
>
> 1. Limitation of activities of daily living.
> 2. Limitation in maintaining social functioning.

      3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. Part 404, Subpart P, App'x 1, § 14.06.

Calmes asserts that she suffers from severe fatigue, malaise, and limitations to activities of daily living and in maintaining social functioning. [Record No. 8, pp. 12-13] However, the alleged limitations to her activities of daily living and social functioning are contradicted by her own testimony. The ALJ determined that Calmes did not meet this definition because she "indicated that she undertakes some household chores, including preparing simple meals, washing dishes and doing laundry. These activities undermine the claimant's allegations because if her impairments were as severe as alleged, she would not likely be engaging in such." [Tr. 619] The ALJ also noted that while the opinions of Calmes' family and acquaintances concerning her ability to function "were given consideration," they were "not consistent with or supported by the evidence of record … [and did] not set forth the detail and standardized test results one would expect in medical reports." [Tr. 622]

Next, Calmes argues that the ALJ erred in his determination that she tested negative for antinuclear antibodies, which generally help demonstrate a UCTD finding under subsection 14.06 of Appendix 1. She contends that the ALJ "ignored … positive lab work that showed not only that she had positive ANAs, but she also had a litany of other positive labs as well." [Record No. 8, p. 12] But the ALJ relied on lab results that demonstrated "negative ANA test results and a rheumatoid factor that was within normal range." [Tr. 620 (citing Tr. 2200-2218)] Although Calmes argues this was erroneous because she also had lab work that supported positive ANA results, this Court must affirm "a decision supported by substantial evidence even if there is substantial evidence in the record to support an opposite conclusion." *Simons*

*v. Barnhart*, 114 F. App'x 727, 732 (6th Cir. 2004) (citing *Smith v. Chater,* 99 F.3d 780, 782 (6th Cir. 1996)).

### B.  Admission of Medical Records

Calmes also argues that the ALJ improperly denied the admission of medical records from physical therapist Steve Marcum.  [Record No. 8, p. 5]  However, Calmes cannot challenge findings regarding Marcum's records because they were addressed in ALJ Jackson's July 8, 2020, findings which Calmes declined to appeal to district court.[4]  [Tr. 760] In addition, in its Notice of Action, the Appeals Council reviewed additional evidence from Marcum and noted it "does not show a reasonable probability that it would change the outcome of the decision."  [Tr. 770] Finally, all of Marcum's reports fall outside of the relevant period of alleged disability.  [*See* Tr. 763-768; 770.]  Accordingly, the undersigned will not reconsider ALJ Jackson's findings regarding Marcum's reports.

### C.  Substantial Evidence

Calmes argues the ALJ overlooked or ignored evidence that supports a conclusion she is disabled.  She further accuses the ALJ engaged of "cherry picking" evidence to support a "preconceived" conclusion.  [Record No. 8, p. 4] But "'an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered.'"  *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)).

Calmes further contends that the ALJ incorrectly determined she was eligible for a "light work" RFC because "Dr. Steven Nutter … stated that Ms. Calmes could not do light

---

[4]   Calmes appealed ALJ Jackson's initial holding to the Appeals Council, however, she did not challenge the subsequent final decision of the Appeals Council.  [Tr. 642-643; 769]

work." [Record No. 8, p. 13] But Calmes argument regarding Dr. Nutter's testimony is incorrect. Instead, he opined that "[t]he claimant's ability to perform work-related activities such as bending, stooping, lifting, walking, crawling, squatting, carrying and traveling as well as pushing and pulling heavy objects is impaired due to the objective findings described above." [Tr. 1702] However, the ALJ accounted for those findings by specifically tailoring Calmes' RFC. Specifically, he considered that Calmes was capable of performing a light work role with a number of restrictions:

> no lifting/carrying more than 20 pounds occasionally, 10 pounds frequently; no standing/walking more than 4 hours out of an 8-hour day; no sitting more than 6 hours out of an 8-hour day; can do unlimited pushing/pulling up to the exertional limitations; no more than occasional balancing, stooping, kneeling, crouching, crawling or climbing of ramps or stairs; no climbing of ladders, ropes or scaffolds; no more than frequent handling or fingering bilaterally; no work in areas of concentrated dusts, fumes, gases or other pulmonary irritants; no work in areas of concentrated heat or cold; no work around dangerous, moving machinery or unprotected heights.

[Tr. 618]

Calmes also asserts that because the ALJ's determination is erroneous because her "counsel asked questions centered around the fact that Ms. Calmes could no longer stand or sit for more than thirty (30) minutes at a time… [and] the vocational expert testified there were no jobs in the American economy Ms. Calmes could perform based upon that limitation." [Record No. 8, p. 7] But put simply, the ALJ is not required to rely on a vocational expert's response to limitations he rejects. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 730 (6th Cir. 2013) (citing *Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 247 (6th Cir.1987)). Based on the relevant evidence, the ALJ determined Calmes' claims regarding her ability to sit, stand, and work were undermined by indications that "she undertakes some household chores, including preparing simple meals, washing dishes and doing laundry." [Tr. 619]

After considering the record, the ALJ determined that Calmes was qualified for light work with certain restrictions. Accordingly, the vocational expert found Calmes could work in any of the following positions, specifically: "(1) sorter (DOT 573.687-034), of which there are 42,000 jobs in the nation; (2) router (DOT 222.587-038), of which there are 70,000 jobs in the nation; and (3) bench assembly (DOT 706.684-042), of which there are 92,000 jobs in the nation." [Tr. 624]

Calmes further argues that the ALJ ignored evidence that (1) her reflex sympathetic dystrophy ("RSD") (2) back condition, and (3) bone density werr not stable, and that her physical condition was deteriorating. First, the ALJ adequately addressed Calmes' RSD. In fact, he recognized it as a severe impairment. [Tr. 616] He further noted that, based on Calmes' testimony, it appeared her RSD was stable because she informed her pain management provider that her medication was working well, and stated "her medication was keeping her pain fairly well controlled" on another occasion thereafter. [Tr. 620 (citing Tr. 2012-2016)]

In the same discussion, the ALJ noted that "[a]n x-ray of the claimant's cervical spine done on June 20, 2023, showed *moderate multilevel degenerative changes* but no acute osseous findings, and reversal of the cervical lordosis, which suggests muscle spasms, despite other findings showing grossly unremarkable prevertebral soft tissues." [*Id.* (emphasis added).] This undermines Calmes' claim that the ALJ "only quotes muscle spasm as the culprit" and "what should be gleaned from the x-rays were moderate multilevel degenerate changes." [*Contra* Record No. 8, p. 10.]

Calmes also states she is "confused when the Defendant [sic] found only *mild* changes in her condition." [*Id.* (emphasis added).] Perhaps she is confused because the ALJ actually agreed the x-ray demonstrated "*moderate* multilevel degenerative changes." [Tr. 620

(emphasis added).] Regardless, the x-ray is not dispositive because "disability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it." *Dyson v. Comm'r of Soc. Sec.*, 786 F. App'x 586, 589 (6th Cir. 2019).

Finally, Calmes contends that the ALJ ignored evidence suggesting "her bone density is consistently getting worse." [Record No. 8, p. 11] But the ALJ noted that, "[u]pon examination with Arthritis and Osteoporosis Center of Kentucky, the claimant often exhibited tenderness at MTP joints of both feet but exhibited no obvious deformities and a full range of motion." [Tr. 620 (citing Tr. 1551-1612)] He further found that "during an August 2021 examination, the claimant exhibited no pain or tenderness in her right ankle of foot, although her left ankle revealed some tenderness and hyperesthesia." [*Id.* (citing Tr. 1699-1702)] The ALJ fully considered Calmes' conditions and made determinations based on substantial evidence, so the undersigned will uphold his findings. *See Smith v. Chater,* 99 F.3d 780, 782 (6th Cir. 1996).

### D. Due Process

Calmes attempts to relitigate her earlier arguments regarding physical therapist Steve Marcum's findings and lay witness evidence from her family and acquaintances about her condition via an allegation she was denied due process. However, explained previously these arguments merely amount to an impermissible request to reweigh the evidence and will be rejected. *Dyson*, 786 F. App'x at 588.

### V.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1.  Plaintiff Keitha Calmes' motion for judgment [Record No. 8] is **DENIED**.

    2.    Defendant Commissioner of Social Security Frank Bisignano's motion for judgment [Record No. 10] is **GRANTED**.

    3.    This action is **DISMISSED** and **STRICKEN** from the docket.

Dated: July 3, 2025.

<u>Danny C. Reeves, District Judge</u>
United States District Court
Eastern District of Kentucky